20UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GARY H. LEHMAN,** *et al.*,

    **Plaintiffs,**

  v.

    Case No. 2:20-cv-3053
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Kimberly A. Jolson

**GULFPORT ENERGY CORP.,** *et al.*,

    **Defendants.**

This matter is before the Court on Defendants Gulfport Energy Corporation and Gulfport Appalachia LLC's (collectively, "Gulfport") Motion for Judgment on the Pleadings (ECF No. 9) and Plaintiffs Gary H. Lehman and Laura J. Lehman, Trustees of the Lehman Family Trust, dated 1/19/01 and Gary H. Lehman and Laura J. Lehman, Trustees of the Lehman Family Farm Trust's (collectively, "Plaintiffs") Motion for Judgment on the Pleadings as to Count I of the Complaint (ECF No. 10). For the reasons stated herein, the Court **GRANTS** Gulfport's motion (ECF No. 9) and **DENIES** Plaintiff's motion (ECF No. 10).

    I.    **BACKGROUND**

    A.  **Factual Background**

This contractual dispute arises from an oil and gas lease (the "Lease") that Gulfport entered into with Plaintiffs on May 23, 2013. (Compl. ¶¶ 8, 13, ECF No. 4.) The Lease, located in York Township, Belmont County, Ohio, covered a total of 231.812 acres. (Lease ¶ 2, ECF No. 9-1.)[1]

---

[1] The Court may properly consider the Lease in deciding the parties' Rule 12(c) motions. *See Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (holding that "a document not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" if the document "is referred to in the complaint and is central to the plaintiff's claim") (citation omitted); *see also Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 719 (S.D. Ohio 2013) (applying *Greenburg* to a motion for judgment on the pleadings). Here, although Plaintiffs did not attach the Lease to their Complaint, Plaintiffs' Complaint directly quotes several provisions of the Lease, and the Lease—which Gulfport allegedly breached—is central to Plaintiffs' claims.

1

The property at issue in this case, however, concerns approximately 86.13 undeveloped acres that Gulfport released on April 18, 2018 (the "Property"). (Compl. ¶¶ 1, 44, ECF No. 4.)

The Lease contains a Reasonable Development clause, which provides:

> **40. <u>REASONABLE DEVELOPMENT.</u>** If oil or gas, are discovered on the leased premises subject to this Lease, Lessee shall develop the leased premises as a reasonable and prudent operator and exercise due diligence in drilling such additional well or wells and market any saleable products produced on the leased premises as may be necessary to fully develop the leased premises. Lessee shall protect the oil and gas in and under the leased premises from drainage by wells on adjoining or adjacent tracts or leases, including but not limited to those held by the Lessee or any Affiliate of Lessee. If oil or gas should be produced in paying quantities from a well on adjacent acreage that is draining any acreage of the leased premises that is not pooled or unitized with that well or already within a producing well Unit or pooled production Unit, Lessee shall within six (6) months after the earlier of: (1) notice from the Lessor of such producing well or (2) Lessee's knowledge of such well having been drilled, begin in good faith and pursue diligently operations leading to the drilling of an offset well and such well shall be drilled to such depth as may be necessary to prevent drainage of the leased premises, and Lessee shall use all means necessary in a good faith effort to make such well produce oil or gas in paying quantities. Any well with a casing passing within five hundred (500) feet of the leased premises shall be presumed to be draining the leased premises, unless the Ohio Department of Natural Resources, or other governmental agency of the State of Ohio at that time has lessened State set back rules to less than 500 feet, in which case such lesser number will apply for purposes of this paragraph. Lessee may rebut this presumption only with evidence acceptable to Lessor, not to be unreasonably rebutted or refuted by Lessor. The requirements of this paragraph shall be subject to the rules and regulations of the State of Ohio. Payment of the bonus, royalties to be paid, shut-in payments, or other amounts due hereunder shall not relieve Lessee from its obligations under this paragraph. In no circumstance, however, will there be any drainage claim or obligation to drill an offset well hereunder if the leased premises or any part thereof is included in a Unit that is producing oil or gas in paying quantities.

(*Id.* at ¶ 40.)

The Lease also includes a Release clause:

> **61. <u>RELEASE</u>**. Notwithstanding anything herein to the contrary, Lessee may at any time and from time to time execute and deliver to Lessor or file for record a release of this Lease as to all or any part of the land covered thereby or any substance or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

(*Id.* at ¶ 61.)

In 2017, within 500 feet of the Property's northern boundary line, XTO Energy, Inc. drilled two wells: the Schnegg Unit B 9H Well and the Schnegg Unit C 7H Well. (Ex. 1 to Compl., ECF No. 4–1.) And in 2018, within 500 feet of the Property's southern boundary line, CNX Gas Company, LLC drilled the Switz9HHSUU Well. (*Id.*; Compl. ¶¶ 31–33, ECF No. 4.) According to ODNR records attached to the Complaint, the Schnegg 7H Well was the first of these wells to produce gas, beginning in Q1 of 2018. (Ex. I to Compl., ECF No. 4–1.) The other two wells, the Schnegg 9H Well and the Switz9HHSU Well, did not start production until Q4 of 2018 and Q1 of 2019, respectively. (Exs. H, K to Compl., ECF No. 4–1.) Thus, when Gulfport released the Property on April 18, 2018, just the Schnegg 7H Well had produced gas, albeit only recently.

### B. Procedural History

On May 14, 2020, Plaintiffs filed this action against Gulfport in the Belmont County Common Pleas Court, asserting two counts: (1) a claim pursuant to Ohio Revised Code § 2721.03 seeking a declaration from the court that the Lease requires Gulfport to drill an offset well under the Property, and (2) breach of contract for Gulfport's failure to drill an offset well and protect the land from drainage. (*See* Notice of Removal, ECF No. 1.) On June 15, 2020, Gulfport removed this action to the Southern District of Ohio on diversity grounds. (*Id.*)

On July 10, 2020, Gulfport moved for judgment on the pleadings. (ECF No. 9.) Plaintiffs timely filed their opposition (ECF No. 11), to which Gulfport replied (ECF No. 14.) On July 28, 2020, Plaintiffs moved for a partial judgment on the pleadings as to Count I of their Complaint (declaratory judgment). (ECF No. 10.) Gulfport opposed this motion (ECF No. 16), and Plaintiffs replied (ECF No. 18).

Prior to adjudicating these motions, Gulfport notified the Court on November 19, 2020, that it had filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, and it invoked a stay of this action pending completion of the bankruptcy. (ECF No. 19.) Accordingly, on November 23, 2020, the Court stayed this action pursuant to Section 362(a) of the Bankruptcy Act, 11 U.S.C. § 362(a). (ECF No. 20.) On February 2, 2022, Gulfport alerted the Court that litigation could resume in this case (ECF No. 21), and the Court lifted the stay thereafter (ECF No. 22.)

Sitting before the Court are the parties' motions for judgment on the pleadings; they are fully briefed and ripe for review.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place,*

4

*LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

### III. ANALYSIS

Plaintiffs' Complaint consists of two claims, though each claim turns on the answer to the same central question: did Gulfport breach the Reasonable Development clause when it released the Property on April 18, 2018, without having drilled an offset well? Resolution of this question, which sits at the heart of Plaintiffs' breach of contract claim, will necessarily resolve Plaintiffs' declaratory judgment claim, which requests a declaration that Gulfport was required to drill an offset well to prevent drainage of the Property. In deciding this matter, the Court will first address Gulfport's arguments seeking dismissal of the breach of contract claim and then turn to Plaintiffs' claim for declaratory judgment.

#### A. Plaintiffs' Claim for Breach of Contract

Count II in Plaintiffs' Complaint alleges that Gulfport breached the Lease's Reasonable Development clause due to its failure to "protect against drainage and to drill an offset well." (Compl. ¶¶ 73–84, ECF No. 4.) Although pleaded as a single count, Plaintiffs assert that Gulfport's failure to (1) "protect against drainage" and (2) "drill an offset well" are separate and independent breaches of the Lease. (Pls. Opp'n at 2–3, 5–7, ECF No. 11.)

To resolve this dispute, the Court will apply Ohio contract law. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (applying Ohio contract law in diversity action); *see also Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d 1010, 1011 (Ohio 2016) ("Under Ohio law, an oil and gas lease is a contract that is subject to the traditional rules of contract construction."). Because oil and gas leases are contracts, "[t]he rights and remedies of the parties . . . must be determined by the terms of the written instrument." *Id.* at 1112. Courts must interpret contracts "so as to carry out the intent of the parties, as that intent is evidence by the contractual

5

language." *Id.* (quoting *Skivolocki v. E. Ohio Gas Co.*, 313 N.E.2d 374, 376 (Ohio 1974)). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Eastham v. Chesapeake Appalachia, LLC*, 754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011)).

### a. Gulfport's duty to drill an offset well

The Court will begin by analyzing whether Gulfport breached the Lease by failing to drill an offset well within six months of learning that an adjacent well had been drilled. Plaintiffs cite to the following language in the Reasonable Development clause as placing such a duty on Gulfport:

> If oil or gas should be produced in paying quantities from a well on adjacent acreage that is draining any acreage of the leased premises that is not pooled or unitized with that well or already within a producing well Unit or pooled production Unit, **Lessee shall within six (6) months** after the earlier of: (1) notice from the Lessor of such producing well or (2) **Lessee's knowledge of such well having been drilled**, begin in good faith and pursue diligently operations leading to the drilling of an offset well and such well shall be drilled to such depth as may be necessary to prevent drainage of the leased premises, and Lessee shall use all means necessary in a good faith effort to make such well produce oil or gas in paying quantities.

(Pls. Opp'n at 2, ECF No. 11 (alteration in original).)

According to Plaintiffs, the event triggering Gulfport's duty to begin drilling an offset well is either (1) notice from the Lessor of an adjacent well, or (2) Lessee's knowledge of such well having been drilled. (*Id.*) Plaintiffs do not argue that they provided Gulfport with notice of an adjacent producing well. But Plaintiffs do allege that Gulfport had knowledge, or at least constructive knowledge given ODNR's publicly accessible well records, of the drilling of the adjacent wells prior to Gulfport's release of the Property. (*Id.*) Therefore, because Gulfport had knowledge of the adjacent wells having been drilled more than six months prior to releasing the

6

Property, coupled with Gulfport's failure to drill an offset well, Gulfport materially breached the Lease.

Gulfport argues—and the Court agrees—that Plaintiffs misinterpret the plain language of the Lease. Under the Reasonable Development clause, the six-month window for Gulfport to begin drilling an offset well does not trigger until Gulfport acquires knowledge that an adjacent well is *producing*:

> **If** oil or gas should be **produced in paying quantities** from a well on adjacent acreage **that is draining any acreage of the leased premises** that is not pooled or unitized with that well or already within a producing well Unit or pooled production Unit, Lessee shall within six (6) months after the earlier of: (1) notice from the Lessor of such producing well or (2) Lessee's knowledge of **such well** having been drilled, begin in good faith and pursue diligently operations leading to the drilling of an offset well and such well shall be drilled to such depth as may be necessary to prevent drainage of the leased premises . . . .

(Lease ¶ 40, ECF No. 9–1 (emphasis added).)

Gulfport's construction aligns with the terms of the Lease for several reasons. First, the cited clause begins with the conditional phrase, "**[i]f** oil or gas should be produced in paying quantities from a well on adjacent acreage **that is draining** any acreage of the leased premises . . . ." (*Id.* (emphasis added).) By using the word "if," the Lease imposes a precondition on Gulfport's duty to drill an offset well—that is, the word "if" indicates that Gulfport's duty does not arise unless and until the adjacent well has produced oil or gas in paying quantities that is draining any acreage of the Property.

Second, the six-month deadline does not begin to run until Gulfport acquires "notice from the Lessor of such producing well" or has knowledge of "**such well** having been drilled." (*Id.* (emphasis added).) The bolded language, "such well," functions as shorthand for the previously described well—namely, a well that is "produc[ing] in paying quantities . . . on adjacent acreage that is draining any acreage of the leased premises . . . ." (*Id.*) Plaintiffs' interpretation, however,

7

incorrectly focuses its attention on the language "having been drilled," which improperly ignores the words "such well." *See Bank of N.Y. Mellon v. Rhiel*, 122 N.E.3d 1219, 1225 (Ohio 2018) (stating that the meaning of a contract "requires consideration of the contract *as a whole* . . . . [A]nd each and every part of the contract must be given meaning if possible") (emphasis added).

In response, Plaintiffs assert that Gulfport's interpretation impermissibly rewrites the terms of the contract. (Pls Opp'n at 3, ECF No. 11.) According to Plaintiffs, Gulfport's interpretation effectively changes the Lease to read: "Lessee shall within six (6) months after the earlier of (1) notice from the Lessor of such producing well or (2) Lessee's knowledge of such well having been drilled **and produced**." (Pls. Opp'n at 3, ECF No. 11 (alteration in original).) The Court disagrees. Plaintiffs' argument here, just like its previous argument, continues to ignore that "such well" precedes "having been drilled." Gulfport's interpretation does not add any additional language to the Lease because "such well" already includes the production precondition—that is, inclusion of the term "such well" in the Lease conveys the following meaning: "Lessee shall within six (6) months after the earlier of: . . . (2) Lessee's knowledge of [a well on adjacent acreage that produces oil or gas in paying quantities and is draining any acreage of the leased premises] having been drilled." Thus, Plaintiffs' accusation that Gulfport's interpretation grafts "and produced" to the Lease is without merit.

Lastly, not only does Plaintiffs' position turn a blind eye to the express terms of the Lease, but it also produces a result that the parties likely could not have intended—a result that further weighs against Plaintiffs. Under Plaintiffs' interpretation, any time a well is drilled on adjacent acreage within 500 feet of Plaintiffs' property, Gulfport must predict, within six months of the adjacent well being drilled, whether that adjacent well will eventually produce oil or gas. In other words, if an adjacent well is drilled within 500 feet of Plaintiff's property, and Gulfport elects not

to invest the resources required to drill an offset well that may never be necessary, and then the adjacent well begins producing more than six months later (as has happened in the case at bar), Gulfport is *automatically* in breach of the Lease. This automatic liability is nowhere to be found in the terms of the Lease, and the Court will not rewrite the Lease to say so.

The Court finds that the plain language of the Reasonable Development clause imposes a duty on Gulfport to "begin in good faith and pursue diligently operations leading to the drilling of an offset well" within six months of having knowledge of "such well"—*i.e.*, an adjacent well that has *produced* oil or gas in paying quantities that *is draining* any acreage of Plaintiffs' property—having been drilled. With this understanding in mind, the Court will now evaluate whether Gulfport has breached the Lease regarding the three wells in question.

Plaintiffs allege that, pursuant to the Reasonable Development clause, Gulfport was required to drill an offset well to prevent drainage of the Property from the neighboring Schnegg 7H and 9H wells and the Switz9HHSU well. (Compl. ¶¶ 59–61, 69, 71–72, 74, ECF No. 4.) The Court disagrees.

Beginning with the Schnegg 9H well and the Switz9HHSU well, they did not begin producing oil or gas until Q4 of 2018 and Q1 of 2019, respectively. (Exs. H, K to Compl., ECF No. 4–1.) By the time these wells commenced production, Gulfport had already released the Property. (Compl. ¶ 18, ECF No. 4 (stating that Gulfport released the Property on April 18, 2018).) Thus, Gulfport did not breach the Reasonable Development clause because the event triggering the duty to drill an offset well had not occurred—namely, the Schnegg 9H well and the Switz9HHSU well had not yet produced oil or gas in paying quantities that was draining any acreage of Plaintiff's property.

9

The analysis for the Schnegg 7H well follows a slightly different route but ends in the same destination: Gulfport's failure to drill an offset well in response to the Schnegg 7H well did not breach the Reasonable Development clause. The Schnegg 7H well began producing gas in Q1 of 2018. (Ex. I to Compl., ECF No. 4–1.) Assuming Gulfport had knowledge of this production at the earliest possible moment on January 1, 2018, then Gulfport released the Property *after* the Schnegg 7H well had begun production and, presumably, was draining some acreage of Plaintiffs' property. But Gulfport still did not breach the Reasonable Development clause because it released the Property well before the six-month deadline had lapsed (July 1, 2018). Under the Lease's Release clause, upon recording a release, Gulfport is "**relieved of all obligations** as to the released acreage or interest." (Lease ¶ 61, ECF No. 9-1 (emphasis added).) Such "obligations" include Gulfport's obligations under the Reasonable Development clause:

> . . . Payment of the bonus, royalties to be paid, shut-in payments, or other amounts due hereunder shall not relieve Lessee from its **obligations** under [the Reasonable Development clause]. In no circumstance, however, will there be any drainage claim or **obligation to drill an offset well** hereunder if the leased premises or any part thereof is included in a Unit that is producing oil or gas in paying quantities.

(*Id.* at ¶ 41 (emphasis added).) Per the plain language of the Lease, the duty to drill an offset well is an "obligation." Thus, Gulfport did not have a duty to drill an offset well because Gulfport's release of the Property within the six-month deadline "relieved it of all *obligations* as to the [Property]." (*See id.* at ¶ 61 (emphasis added).) Accordingly, Gulfport did not breach the Lease when it forewent drilling an offset well after the Schnegg 7H well began producing gas, and the Court dismisses this claim.

### b. Gulfport's duty to protect the Property from drainage

Plaintiffs also argue that Gulfport breached the Lease through its failure to protect the Property from drainage caused by the adjacent wells. (Pls. Opp'n at 5–7, ECF No. 11.) Plaintiffs'

10

Complaint cites to the following language in the Reasonable Development clause as imposing a duty on Gulfport "in addition to Gulfport's obligation to drill an offset well(s)":

> Lessee shall protect the oil and gas in and under the leased premises from drainage by wells on adjoining or adjacent tracts or leases, including but not limited to those held by the Lessee or any Affiliate of Lessee.

(Compl. ¶ 81, ECF No. 4.) Without elaborating on how Gulfport breached this duty (other than by failing to drill an offset well), Plaintiffs conclude that "Gulfport has not protected the oil and gas under the Property from being drained," and therefore Gulfport "has breached the Lease." (*Id.* at ¶¶ 82–83.)

Gulfport seeks to dismiss this separate claim for breach of contract, arguing that Plaintiffs have not plausibly alleged that Gulfport owed any additional duty to protect the Property from drainage beyond the duty to drill an offset well. (Defs. Mot. at 9, ECF No. 9.) The Court agrees.

Nowhere in the Complaint do Plaintiffs allege what action the Lease requires Gulfport to take in order to protect Plaintiffs' property from drainage, aside from drilling an offset well. Helpfully, the Reasonable Development clause—the same clause containing the alleged duty to protect Plaintiffs' property from drainage—directly addresses Gulfport's obligations when an adjacent well is draining Plaintiffs' property:

> Lessee shall protect the oil and gas in and under the leased premises from drainage by wells on adjoining or adjacent tracts or leases, including but not limited to those held by the Lessee or any Affiliate of Lessee. **If oil or gas should be produced in paying quantities from a well on adjacent acreage that is draining any acreage of the leased premises** that is not pooled or unitized with that well or already within a producing well Unit or pooled production Unit, **Lessee shall** within six (6) months after the earlier of: (1) notice from the Lessor of such producing well or (2) Lessee's knowledge of such well having been drilled, **begin in good faith and pursue diligently operations leading to the drilling of an offset well** and such well shall be drilled to such depth as may be necessary **to prevent drainage of the leased premises** . . . .

11

(Lease ¶ 40, ECF No. 9–1 (emphasis added).) The quoted language expressly sets forth what Gulfport must do when an adjacent well "is draining any acreage of the leased premises": Gulfport must "begin in good faith and pursue diligently operations leading to the drilling of an offset well . . . to prevent drainage of the leased premises . . . ." (*Id.*) Simply put, when an adjacent well is draining Plaintiffs' property, the response contemplated in the Lease is the drilling of an offset well.

Neither the Lease nor Plaintiffs articulate any additional obligations falling on Gulfport to protect Plaintiffs' property from drainage—and the Court will follow suit. Plaintiffs' assertion that Gulfport breached the Lease because it "has not protected the oil and gas under the Property from being drained," without more, is simply a "legal conclusion couched as a factual allegation," and therefore falls short of the Federal Rules' pleading requirements. *See Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Plaintiffs have not stated a separate claim for breach of the duty to protect the Property from drainage; Accordingly, the Court dismisses this claim.

### B. The Court's Interpretation of the Reasonable Development Clause Necessarily Decides Plaintiffs' Declaratory Judgment Claim

In addition to Plaintiffs' claim for breach of contract, Plaintiffs also seek a declaratory judgment from the Court declaring that, under the Reasonable Development clause, Gulfport was required to drill an offset well to prevent drainage of the Property. (Compl. ¶¶ 52–72, ECF No. 4; *see also* Pls. Mot. at 1, ECF No. 10.) The Federal Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . .

28 U.S.C. § 2201(a).

Without opining on the propriety of Plaintiffs bringing a declaratory judgment claim alongside an arguably duplicative breach of contract claim,[2] the Court notes only that, in light of its discussion of the Reasonable Development clause in Section III.A—namely, that the Lease did not require Gulfport to drill an offset well to prevent drainage of the Property—the Court also finds it appropriate to dismiss Plaintiffs' declaratory judgment claim. *See Putman v. Allstate Ins. Co.*, No. 1:21-cv-14, 2021 U.S. Dist. LEXIS 77768, at *8 (S.D. Ohio Apr. 22, 2021) (dismissing declaratory judgment claim where breach of contract claim necessarily decides "the status of the contractual relationship").

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** Gulfport's Motion for Judgment on the Pleadings (ECF No. 9) and **DENIES** Plaintiffs' Motion for Judgment on the Pleadings as to Count I of the Complaint (ECF No. 10). Accordingly, Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to enter judgment in favor of Gulfport and close this case.

**IT IS SO ORDERED.**

**5/1/2023**　　　　　　　　　　　　　　　　s/Edmund A. Sargus, Jr.
**DATE**　　　　　　　　　　　　　　　　　　EDMUND A. SARGUS, JR.
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[2] *See Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938–939 (S.D. Ohio 2012) (dismissing plaintiffs' declaratory judgment claim as duplicative of their breach of contract claim where plaintiffs had already placed at issue the validity and enforceability of the relevant contracts); *McGlone v. Centrus Energy Corp.*, 2020 U.S. Dist. LEXIS 135784, *48–49 (S.D. Ohio July 31, 2020) (dismissing claim for declaratory judgment as duplicative of plaintiff's claim for breach of contract).